# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**QBE INSURANCE CORPORATION**
**a/s/o BRICKELL BAY PLAZA,**
**L.L.C. as Assignee of the Club at**
**Brickell Bay Plaza Condominium**
**Association, Inc.,**                                    CASE NO.: 10-21107 CIV-GOLD

      Plaintiff,
vs.

**JORDA ENTERPRISES, INC. d/b/a**
**JORDA MECHANICAL**
**CONTRACTORS,**

      Defendant.
_____/

**RE-RE-NOTICE OF TAKING DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)[1]**

**TO:   QBE INSURANCE CORPORATION a/s/o BRICKELL BAY PLAZA, L.L.C. as Assignee of the Club at Brickell Bay Plaza Condominium Association, Inc.**

**PLEASE TAKE NOTICE** that pursuant to Fed. R. Civ. P. 30(b)(6), the deposition of QBE INSURANCE CORPORATION will be taken on December 12, 2011 at 9:00 a.m. for the purposes of discovery or as evidence in this action at the offices of Duane Morris LLP, Suite 3400, 200 South Biscayne Boulevard, Miami, Florida 33131-2318, before a court reporter authorized to administer oaths. The deposition will be recorded by stenographic means.

The above-named corporation, pursuant to Fed. R. Civ. P. 30(b)(6), shall designate an individual or individuals with personal knowledge to appear and attend at the time and place specified for the purpose of testifying to the following matters*:

> *For purposes of complying with Fed. R. Civ. P. 30(b)(6), Plaintiff
> is requested to designate those individuals who can provide the
> following for QBE Insurance Corporation, Brickell Bay Plaza,

---

[1] On November 14, 2011 Timothy Edward O'Brien appeared for this deposition and testified that he was not the proper person to testify on behalf of QBE Insurance Corporation on the matters designated by paragraphs 1, 2, 3, 5, 7, 8 and 1-35 inclusive on page 6 of this Re-Re-Notice of Taking Deposition. Defendant has repeatedly requested that QBE Insurance Corporation designate persons to testify concerning these paragraphs, and at this time has not received the identity of any person. Defendant is relying upon written communication from Plaintiff's counsel to serve this notice and the proper person(s) will be produced for the continuation of this deposition. By this notice, Defendant is not waiving any objection to Plaintiff's failure to comply with its discovery obligations.

L.L.C., and the Club at Brickell Bay Plaza Condominium Association, Inc. (**collectively referred to below as "Plaintiff"**):

1. Maintenance personnel responsible for the HVAC system at the Subject Property (as identified in Plaintiff's Complaint in this action) since its installation, the procedures and practices followed concerning maintenance and repair of the HVAC system including procedures for emergencies, natural disasters, hurricanes, pipe bursts and valving off, and records maintained concerning maintenance and repair of the HVAC system and events or incidents involving the HVAC system;

2. Residents and other persons present during Hurricane Katrina who contacted or observed maintenance personnel at the Subject Property, or who observed property damage, flooding and/or any pipe burst;

3. All persons who were responsible for, who observed and/or handled the HVAC pipe which separated or caused flooding, and other components of the HVAC, the chain of custody of the pipe and other components beginning on August 25, 2005 and continuing through today, preservation of physical and documentary evidence (or the lack of any preservation), notice to, opportunities for and inspections by Jorda (or the lack thereof);

4. The Club at Brickell Bay Plaza Condominium, Inc. ("Association") and Brickell Bay Plaza, LLC ("Developer") documents regarding (a) the claim and investigation of the claim (including but not limited to the Association's initial investigation documents, retention of and investigation by Gary Rosen and Gary Rosen's List of Items dated February 18, 2006, Penabella Supplemental Report BB 4461 and (b) all settlement terms discussed, agreed upon and documentation of same or the lack thereof;

5. Facts concerning the eight listed factors alleged to have contributed to the 2005 Major Flood in paragraph 15 of the proposed Second Amended Complaint in *Club at Brickell Bay Condominium Association, Inc. v. Brickell Bay Plaza, LLC, et al.*, Case Number 07-17728 CA 40 in the Circuit Court of the Eleventh Judicial Circuit of Florida, a copy of which is attached as Exhibit A, including the identity of and basis for each person responsible for the occurrence of each of the numbered factors (1 through 8 inclusive), Jorda's responsibility, if any, for each of the numbered factors and the basis for such responsibility, responsibility and damages for each of the eight listed factors, the responsibility for each person identified which Plaintiff attributes to each of the numbered factors, the relationship of causation each of the numbered factors bears in relation to the other numbered factors, how each factor specifically caused or contributed to the alleged "devastating nature of the 2005 Major Flood";

6. Payments actually made by QBE, the Developer and the Association, including all documents relating to payments, and including all uses of QBE funds, non-payments and reasons for non-payments to vendors or persons performing repairs to the Subject Property;

7. Operation of the cooling tower, pumping systems and electrical systems, including any

loss of electrical power or shut downs on or about August 26, 2005;

8. Change of construction from apartment to condominium, notice provided to subcontractors including Jorda, and agreements or consent of subcontractors to such change;

9. All facts and information known or reasonably available to Plaintiff concerning the subject matter of this action or the claims or defenses of any party to this action.

10. All matters inquired about in the discovery requests served on Plaintiff in this action by Defendant, Jorda Enterprises, Inc. d/b/a Jorda Mechanical Contractors.

11. All documents produced by Plaintiff in Plaintiff, QBE Insurance Company's, Rule 26 Disclosures or otherwise in this action.

12. All information, documents, facts, data, assumptions and instructions provided to Plaintiff's expert witnesses in this action.

**Definitions**

For the purposes of the following matters upon which examination is requested, the following definitions apply:

**Archival Data**:  Information that is not directly accessible to the user of a computer system but that an organization maintains for long-term storage and record-keeping purposes.  Archival Data may be written to removal media such as a CD, magneto-Optical media, tape, or other electronic storage device, or may be maintained on system hard drives or network servers.

**Archive**:  A copy of data on a computer drive, or on a portion of a drive, maintained for historical reference.  Long-term repository for the storage of records. Electronic archives preserve the content, prevent, or track alterations and control access to electronic records.

**Backup Data**: An exact copy of system data which serves as a source for recovery in the event of a system problem or disaster. Backup Data is generally stored separately from Active Data on portable media. Backup Data is distinct from Archival Data in that Backup Data may be a copy of Active Data, but the more meaningful difference is the method and structure of storage which impacts its suitability for certain purposes.

**Backup Tape:**  Magnetic tapes used to store copies of data, for use when restoration or recovery of data is required. Data on backup tapes are generally recorded and stored sequentially, rather than randomly, meaning in order to locate and access a specific file or data set, all data on the tape preceding the target must first be read, a time-consuming and inefficient process. Backup tapes typically use data compression, which increases restoration time and expense, given the lack of uniform standards governing data compression.

**Computer**:   Includes but is not limited to network servers, group or collaborative servers

(including SharePoint), removable media, desktops, laptops, notebook computers, IPADs, mainframes and PDAs (personal digital assistants and other such handheld computing devices), digital cell phones and pagers of QBE and its employees, and QBE Insurance Corporation a/s/o Brickell Bay Plaza, L.L.C. as Assignee of The Club at Brickell Bay Plaza Condominium Association, Inc. and its agents and employees.

**Data**:  Any and all information stored on a computer or on media that may be accessed by a computer.

**Digital Camera:**  A camera that stores still or moving pictures in a digital format (TIFF, GIF, etc.).

**Document**:  A page, a collection of pages, or any file produced manually or by a software application that constitutes a logical, single communication of information. Examples include a letter, a spreadsheet, or an e-mail.  Includes, but is not limited to, any electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software); any "deleted" but recoverable electronic files on said media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from random access memory on a hard drive during the normal operation of a computer [RAM slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data).

**Electronically Stored Information ("ESI")**:  Information created, manipulated, stored, and best utilized in digital form, requiring the use of computer software. ESI is distinguished from information derived from media, such as writing or images on paper, photographic images, analog recordings, and microfilm.

**File**:  A collection of data or information stored under a specified name on a disc.

**Hard Drive**: The primary hardware that a computer uses to store information, typically magnetized media on rotating disks.

**Help Features/Documentation**: Instructions that assist a user on how to set up and use a product including but not limited to software, manuals and instruction files.

**Imaged Copy**:  A "mirror image" bit-by-bit copy of a hard drive (i.e., a complete replication of the physical drive).

**Input Device**:  Any object that allows a user to communicate with a computer by entering information or issuing commands (e.g., keyboard, mouse or joystick).

**Legacy Data**:  Information, the development of which an organization may have invested significant resources in and has retained its importance, but has been created or stored by the use of software and/or hardware that has become obsolete or replaced ("legacy systems"). Legacy data may be costly to restore or reconstruct when required for investigation or litigation analysis or discovery.

**Magnetic or Optical Storage Media**: Include, but are not limited to, hard drives (also known as "hard disks"), backup tapes, CD-ROMs, DVD-ROMs, JAZ and Zip drives, and floppy disks.

**Materials**: Refers to documents and electronically stored information ("ESI"), including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained, translated, if necessary, by the respondent into reasonably usable form. See Fed. R. Civ. P. 34. Electronic data can appear in the form of e-mail (including attachments); word processing documents; spreadsheets; presentation documents; graphics; animations; images; audio, video, and audiovisual recordings; text messages; instant messages; and voicemail. Moreover, electronic data can reside on the following platforms in the possession of the party or a third person under the control of the party (such as an employee or outside vendor under contract): databases; networks; computer systems, including legacy systems (hardware and software); servers; archives; backup or disaster recovery systems; tapes, discs, drives, cartridges, and other storage media; laptops; personal computers; IPADs; internet data; personal digital assistants; handheld wireless devices; mobile telephones; paging devices; and audio systems, including voicemail. Plaintiff should consider whether potentially producible electronic data may include data that have been deleted but can be restored.

**Media**: An object or device, such as a disk, tape, or other device, on which data is stored.

**Metadata**: Information about a particular data set which describes how, when, and by whom it was collected, created, accessed, or modified, and how it is formatted (including data demographics, such as size, location, storage requirements, and media information).

**Native File/Format**: Source document, as collected from the source computer or server, before any conversion or processing of the document.

**Network**: A group of connected computers that allow people to share information and equipment (e.g., local area network [LAN], wide area network [WAN], metropolitan area network [MAN], storage area network [SAN], peer-to-peer network, client-server network).

**Network Operating System**: Software that directs the overall activity of networked computers.

**Operating System**: Software that directs the overall activity of a computer (e.g., MSDOS, Windows, Linux).

**Records**: Information created, received, and maintained as evidence and information by an organization or person, in pursuance of legal obligations or in the transaction of business, regardless of media.

**Server**: Any central computer on a network that contains data or applications shared by multiple users of the network on their client PCs. A computer that provides information to client machines. For example, there are web servers that send out web pages, mail servers that deliver e-mail, list servers that administer mailing lists, FTP servers that hold FTP sites and deliver files to users who request them, and name servers that provide information about Internet host names.

**Slack**: The unused space on a cluster that exists when the logical file space is less than the physical file space. Also known as file slack. A form of residual data, the amount of on-disk file space from the end of the logical record information to the end of the physical disk record. Slack space can contain information soft-deleted from the record, information from prior records stored at the same physical location as current records, metadata fragments, and other information useful for forensic analysis of computer systems.

**Software**: Any set of instructions stored on computer-readable media that tells a computer what to do. Includes operating systems and applications.

**Software Application**: A set of electronic instructions, also known as a program, which instructs a computer to perform a specific set of processes.

**Spoliation**: The destruction of records which may be relevant to ongoing or anticipated litigation, government investigation, or audit.

**Storage Devices**: Any device that a computer uses to store information.

**Storage Media**: Storage media are any removable devices that store data.

**TIFF**: Tagged Image File Format; graphic file format used for storing still-image bitmaps. TIFFs are stored in tagged fields, and programs use the tags to accept or ignore fields, depending on the application.

**Background**

1. The person at Club at Brickell Bay Plaza Condominium Association, Inc. who is the most knowledgeable about the retention and destruction of documents of the Club at Brickell Bay Plaza Condominium Association, Inc.

2. The existence, staffing, and functions of any information technology or management information systems department(s), division(s), or equivalent functional group(s) in Plaintiff or provided to Plaintiff through any outsourced service provider.

**Information Systems**

3. The identity of all employees employed by Plaintiff during the period from February 1, 2002[2] to the present time who are or were responsible for developing, managing and maintaining its technology infrastructure. This includes, but is not limited to, information systems, servers or other network storage devices and related peripheral equipment, hardware, software, desktop computers, portable computers, laptop computers, personal digital assistants (PDAs), telephones, and other similar electronic devices.

---

[2] For each of the matters where a person is to be designated for the time period from February 1, 2002 to the present time, these time periods pertain to Brickell Bay Plaza, L.L.C., and the Club at Brickell Bay Plaza Condominium Association, Inc. Without waiver or prejudice to the foregoing, Plaintiff may limit the time period of these matters in its designation for QBE Insurance Corporation to the period of time from July 1, 2005 to the present time.

4. The identity of all non-employee consultants, consulting firms, contractors, or similar entities retained by Plaintiff during the period from February 1, 2002 to the present time who are or were responsible for installing, servicing, managing, or maintaining its technology infrastructure. This includes, but is not limited to, information systems, servers or other network storage devices and related peripheral equipment, hardware, software, desktop computers, portable computers, laptop computers, personal digital assistants (PDAs), telephones, and other similar electronic devices.

5. A description of and the operation of all groups of connected computer systems used by Plaintiff that permit users to share information and transfer data, including, but not limited to, local area networks (LANs), wide area networks (WANs), client-server networks, virtual private networks (VPNs), and storage area networks (SANs); including all equipment, devices, components, and network resources that establish and maintain the network environment, including, but not limited to, routers, switches, hubs, bridges, firewalls, proxies, etc.

6. A description of and the operation of all available third-party connectivity between the computer systems and network environment used by Plaintiff, including the type of information that is shared, the manner in which the information is transferred, and the identity of any individuals who have authorization to transfer information into or out of the network environment.

7. A description of and the operation of each individual personal computer system that is or has been used by employees of Plaintiff for the period from February 1, 2002 to the date of this deposition that includes, but is not limited to, desktop computers, portable computers, laptop computers, personal digital assistants (PDAs), telephones, and other similar electronic devices, including descriptions of equipment and any peripheral technology attached to the computer system.

8. A description of all hardware or software modifications made to the computer systems used by Plaintiff from February 1, 2002 to the date of the deposition, including type and nature of each modification, dates of modification, software and hardware titles, version numbers, contact information of person(s) performing the modification, and location of data backups made prior to modification.

9. A description of all operating systems, including, but not limited to, Microsoft Windows, Linux, Unix, DOS, Solaris, etc., installed on each of Plaintiff's respective computer systems from February 1, 2002 to the date of this deposition.

10. A description of the title and version number of any and all software installed or executed on each of Plaintiff's respective computer systems from February 1, 2002 to the date of this deposition, including password, encryption, utility and scrubbing programs.

11. A description of any and all cell phones, PDAs, digital convergence devices, or other portable electronic devices, whether owned by Plaintiff or by others, used by any Plaintiff employees in the performance of his or her employment from February 1, 2002 to the

    date of this deposition.

12. A description of any and all servers or other network storage devices, desktop computers, portable computers, laptop computers, personal digital assistants (PDAs), telephones, and other similar electronic devices that have had their hard drives reformatted, wiped, or replaced from February 1, 2002 to the date of this deposition.

**Web and Internet**

13. A description of, and the operation of, the Internet and intranet connectivity of each computer system used by Plaintiff, including, but not limited to, client-server communications and client-client communications facilitated through modem, network, or direct connection.

    a. Identification of the parties, internal and external, responsible for creation and storage of web content (both intranet and internet) at Plaintiff.

    b. A description of how long web content is maintained by Plaintiff.

    c. Identification of who is responsible for ensuring proper and timely destruction of web content.

    d. Identification of any and all vendors used by Plaintiff to assist with off-site data storage, creation of web content, storage of web content.

    e. A description of the retention obligations of any such vendor.

**E-mail, Text Messages, Instant Messages**

14. A description of any e-mail-based encryption, text messaging, and instant messaging used by Plaintiff or its employees from February 1, 2002 to the date of this deposition.

15. A description of all e-mail systems, accounts and policies and procedures in place at Plaintiff and its employees from February 1, 2002 to the date of this deposition.

**Voicemail**

16. A description of the components and design implementation or distribution of Plaintiff's telephone and voice messaging systems, including all hardware, software, and third-party service providers used from February 1, 2002 to the date of this deposition.

**Policies and Procedures**

17. A description of any systems, policies, practices or procedures in place at Plaintiff to preserve relevant or discoverable electronically stored information ("ESI") when litigation or a regulatory proceeding becomes reasonably anticipated.

18. A description of all policies and procedures governing the use of removable media, such

as CD-ROMs, Zip disks, floppy disks, tape drives, removable hard drives, etc., associated with Plaintiff's computer systems or network from February 1, 2002 to the date of this deposition.

19. A description of policies and procedures used for performing backups on all computer systems and a description of any hardware or software used to perform such backups from February 1, 2002 to the date of this deposition.

20. A description of policies and procedures used to perform backups or for archiving email messages, text messages and instant messages, and a description of any hardware or software used to perform such backups or archiving from February 1, 2002 to the date of this deposition.

21. A description of policies and procedures used for performing backups or for archiving any and all voice messaging records and a description of any hardware or software used to perform such backups or archiving from February 1, 2002 to the date of this deposition.

22. A description of all policies and procedures governing employee use of Internet newsgroups, chat rooms, social networks (e.g., Facebook, Myspace, Twitter) or instant messaging on Plaintiff's computer systems from February 1, 2002 to the date of this deposition.

23. A description of all policies and procedures pertaining to data retention and destruction from February 1, 2002 to the date of this deposition and a description of all hardware or software used to facilitate the deletion of data subject to any data-retention and destruction policies and procedures.

24. A description of the development, maintenance, use, enforcement and auditing of the records management and preservation notice policies and procedures of Plaintiff.

25. A description of all policies and procedures used by Plaintiff, its employees, agents or vendors for data preservation, collection, preparation, and production in litigation.

26. A description of the costs and burdens associated with restoration of sources of information described by Plaintiff as not to be reasonably accessible in discovery responses in this action, and whether these sources of information have been restored since August 1, 2005.

27. The taking, maintenance and content of minutes of the meetings of the Board of Directors, from January 1, 2002 to April 8, 2010 containing any references to considerations or discussions of preventing such spoliation of potential evidence.

28. When preserving information from any key player and/or persons identified by Plaintiff in its Rule 26 Disclosures, did Plaintiff preserve active and inactive data, such as deleted and slack space, on key player's hard drive? If so, how? If not, why?

29. All efforts Plaintiff has made to identify relevant materials related to this matter, including what types and sources of data, media, and applications were searched, and by whom. When searching for relevant materials in this matter, which departments and/or business units were searched? Which were not searched? Why not? What physical locations were searched? How were these physical locations identified for search? Which locations were not searched? Why not? What filtering processes/software and search terms, if any, were used for each search? How were such search terms chosen? By whom? Who conducted these searches? Were individual employees allowed to search their own documents and gather their own relevant materials?

30. When searching for relevant materials for this matter, what storage mediums were searched, including but not limited to servers, network locations, personal shares, local storage, drives and removable storage media? What storage options are available to employees? For key players and/or persons identified by Plaintiff in its Rule 26 Disclosures, which of these storage options were not searched? Why not? What type of files, application files, or application data were searched? For key players and/or persons identified by Plaintiff in its Rule 26 Disclosures, what sections of their hard drives were searched?

31. How were the materials and ESI of departing and/or transferring employees handled in relation to searching and collecting material relevant to this matter?

32. Of the potentially inaccessible data sources identified by Plaintiff in its Rule 26 Disclosures and Answers to Interrogatories, and any other potentially inaccessible data sources known to Plaintiff, including backup tapes, fragmented data, and obsolete or legacy data, which are Plaintiff neither preserving, searching nor producing? Please detail why each of these potentially inaccessible sources is inaccessible. What is the likelihood of finding responsive information on these sources? How much time would it take to restore these sources? How much would it cost? Who is knowledgeable about these sources? Has Plaintiff or any other party, whether involved in this litigation or not, ever sampled these sources? For what purpose? Have any of these sources ever been restored? For what purpose?

33. Identify all of the locations from which materials were gathered for production for each request for production.

**Destruction**

34. A description of any and all information relevant to this legal matter that was deleted, physically destroyed, corrupted, damaged, lost, or overwritten, and whether this information was lost pursuant to the data retention and destruction policies.

35. A description and identification of any electronic document repositories/depositories or systems of record that may contain documents, records, or ESI relevant to this matter, including whether these repositories/depositories and systems of record are searchable, and efforts made to search for and identify materials relevant to this matter located in

these repositories/depositories and systems of record.

Dated:  December 6, 2011

**DUANE MORRIS LLP**
1180 West Peachtree Street, NW, Suite 700
Atlanta, Georgia 30309
Telephone:  404.253.6912
Facsimile:  404.745.0971


/s/ Steven D. Ginsburg
Steven D. Ginsburg
Florida Bar Number:  218723
SDGinsburg@duanemorris.com

and

Warren D. Zaffuto, Esq.
Florida Bar No. 0743461
WDZaffuto@duanemorris.com
**DUANE MORRIS LLP**
200 South Biscayne Boulevard, Suite 3400
Miami, Florida 33131
Telephone:  305.960.2200
Facsimile:  305.397.2536

*Counsel for Defendant Jorda Enterprises, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Re-Notice of Taking Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) was served via U.S. Mail and e-mail this 6th day of December, 2011 upon the following:  **Sorraya M. Solages, Esq., Melissa M. Sims, Esq., and William S. Berk, Esq.**, Berk, Merchant & Sims, PLC, 2 Alhambra Plaza, Suite 700, Coral Gables, FL 33134.

/s/ Steven D. Ginsburg
Steven D. Ginsburg

11