UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 10-21107-CIV-GOLD/GOODMAN

QBE INSURANCE CORPORATION,

    Plaintiffs,
v.

JORDA ENTERPRISES, INC.,

    Defendant.
_____

**ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT OPINION**

The Honorable Alan S. Gold referred (ECF 109) to me Defendant's Motion to Exclude Expert Opinion (ECF 107). For the reasons outlined below, the Court **denies** the motion.

Plaintiff QBE filed this lawsuit against Jorda for equitable subrogation after paying its insured, a condominium, approximately $3.03 million for damage resulting from water which poured out of a PVC pipe in the building's air conditioning system during Hurricane Wilma. Defendant Jorda installed the air conditioning system nearly two years before the hurricane, and QBE alleges that Jorda did so negligently and is therefore obligated to pay QBE for the money it paid out on the insurance claim.

On July 25, 2011, QBE served Jorda with a letter which it describes as a summary of the opinions of its expert witness, Sherri Hankal, an engineer. On September 30, 2011, Jorda took Ms. Hankal's deposition, which generated a 190-page transcript. More than four months later, on February 6, 2012, Jorda filed a motion to exclude Ms. Hankal's expert opinion testimony. Jorda's primary argument is that the written summary provided the previous July was inadequate and that Ms. Hankal, in her deposition, added new opinions.

Jorda's motion violates Local Rule 7.1, which requires a movant to confer about the relief sought before filing a motion and to include a written certification about the results of, and circumstances surrounding, the rule-required conference.

The local rule also provides the consequences for failure to comply: "to grant or deny the motion and impose on counsel an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee."

Because Jorda violated the local rule, the Court will deny the motion.

In connection with the denial, the Court makes several observations:

First, the local rule is clear, straightforward and unequivocal.

Second, at the risk of stating the obvious, parties are required to follow the local rules.

Third, there is no "but-the-opposing-party-would-never-have-agreed-to-the-motion-had-I-bothered-to-confer" exception to the local rule. If there were such an exception carved out, then it would swallow the rule, as movants would routinely invoke the exception as a rationale for not bothering to follow the pre-filing conference requirement.

Fourth, Jorda is familiar with the local rule. It has in this case filed several motions complying with the local rule. Those motions range from routine ones, such as a motion for enlargement of time (ECF 116) and motions to compel (ECF 47 and 58), to more-atypical, case-specific ones, such as a motion for sanctions for failure to comply with Rule 30(b)(6) (ECF 70).

Fifth, Jorda routinely sought to persuade this Court to invoke negative consequences against QBE for *its* purported failure to follow rules, such as the Federal Rules of Civil Procedure, the Local Rules and the orders entered by the Court. Jorda has, in fact, obtained significant relief in this case because of QBE's failure to comply with applicable rules. For

example, the Court entered an Order (before Jorda failed to follow the local rule in connection with the instant motion) granting, in part, Jorda's motion for sanctions because of QBE's failure to follow Federal Rule of Civil Procedure 30(b)(6) (ECF 70).

Sixth, it would be inequitable for Jorda to seek significant relief against QBE for its failure to follow the rules but also expect to obtain relief when it commits a clear-cut violation of the local rules.[1]

Because of the local rule violation, Jorda's motion to exclude Ms. Hankal's testimony is denied. Nevertheless, this ruling does not preclude Jorda from seeking to impeach Ms. Hankal at trial with the issues it raised in the motion. For example, the Court considers all of the following issues (raised in the motion) to be fair game for cross-examination: (1) the fact that Ms. Hankal's only written opinion or report (or summary) is contained in a two-page letter from January 26, 2006 (years before the lawsuit was filed), (2) the fact that QBE never spoke to Ms. Hankal about her opinions in the intervening years, (3) the fact that Ms. Hankal advised QBE of her additional expert conclusions the night before her September 30, 2011 deposition, and (4) the fact that all but one of Ms. Hankal's opinions were not outlined in her January 2006 letter.

Although the Court is denying the motion because of the local rule violation, the Undersigned notes that one of the grounds for the motion is based on Jorda's contention that Ms. Hankal lacks the requisite expertise and background to provide opinion testimony. In other words, this portion of the motion is, in effect, a motion *in limine*, based on Federal Rule of

---

[1] "What's sauce for the goose is sauce for the gander," a traditional and old fashioned proverb used in Great Britain and Australia and slightly modified in the United States, where it is more-often known as, "What's good for the goose is good for the gander." The saying is commonly understood to mean, "if a particular type of behavior is acceptable for one person, it should also be acceptable for another person." http://idioms.thefreedictionary.com/Whats+sauce+for+the+goose (last visited March 16, 2012).

3

Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) and their progeny.

Because this *Daubert* challenge is one which undoubtedly will arise at trial anyway, the Undersigned will address *this* aspect of the motion as a courtesy to Judge Gold, who will be presiding over the trial and who would otherwise need to address these arguments. But rulings on *in limine* motions are often dependent on how the evidence actually unfolds at trial, so this ruling is only a preliminary one, subject to change at trial if the evidence turns out to be different than represented in the motion and memoranda.

At bottom, Jorda's challenge to Ms. Hankal's expert opinions is a three-pronged attack. First, Jorda questions Ms. Hankal's credentials and background. Second, Jorda contends that her activities in *this* case are inadequate to permit her to offer expert opinion testimony at trial. And third, it argues that her testimony would not be helpful.

Concerning the qualifications, Jorda points to the fact that Ms. Hankal has never personally installed an air conditioning unit, is not an expert in adhesives and is unfamiliar with the particular Des Champs air conditioning unit Jorda installed at the condominium in question. Jorda emphasizes Ms. Hankal's purported lack of expertise with adhesives because one of her opinions is that Jorda did not use sufficient glue when installing the return pipe in the air conditioning system.

In response, QBE takes the position that Ms. Hankal is qualified to render expert opinions in the case. It notes that Ms. Hankal is a Florida-registered professional mechanical engineer and has been one since 1999. QBE also notes that Ms. Hankal holds a Bachelor of Science in mechanical engineering and is also a Florida-licensed general contractor. Moreover, QBE notes her myriad professional affiliations, such as membership in the American Society of Mechanical

4

Engineers, the American Gas Association, the International Association of Marine Investigators, the American Society of Heating, Refrigeration and Air Conditioning Equipment and Solar Energy International.

Concerning Ms. Hankal's employment, QBE points to her history as a mechanical engineer, a senior mechanical engineer, a project engineer and a facilities engineer.

Moreover, given that the facts here concern a leak from a pipe used in an air conditioning system, QBE emphasizes that Ms. Hankal has been involved in forensic mechanical engineering examination of air conditioning systems (a/k/a HVAC systems), including technical evaluations of product failures, as well as research, design and implementation of equipment and piping, accident reconstruction and mechanical design analysis.

The qualification standard for expert testimony is "'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Vision I Homeowners Ass'n, Inc. v Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1324 (S.D. Fla. 2009) (finding expert witness qualified to provide opinions on wind damage in a lawsuit filed by a homeowners association against an insurance company for not paying claim for damages incurred in Hurricane Wilma – even though he is not an engineer or a meteorologist) (brackets in original).

As long as there is "some reasonable indication of qualifications," a trial court may permit the expert to testify "without abdicating its gate-keeping function." Once the proponent demonstrates that the expert has the sufficient expertise, the "qualifications become an issue for the trier of fact father than for the court in its gate-keeping capacity." *Rushing v. Kansas City So. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999).[2]

---

[2] United States Magistrate Judge Robin Rosenbaum very recently cited (several times) *Rushing* with approval in *Clena Investments, Inc. v. XL Specialty Ins. Co.*, No. 10–62028, 2012

Jorda argues that Ms. Hankal has only "generalized" expertise and background, but "so long as an expert stays within the reasonable confines of his subject area, a lack of specialization goes to the weight, rather than the admissibility, of the testimony." *Louviere v. Black & Decker U.S. Inc.*, No. 1:00CV597 (TH), 2001 WL 36385828 (E.D. Tex. Oct. 26, 2001) (concluding that expert, a licensed professional engineer, had sufficient qualifications to render opinions about the design and manufacturing defects in an electric hedge trimmer even though he lacked specific experience with consumer gardening products, the product in question or similar power tools). *Cf. St. Martin v. Mobil Exploration & Producing U.S. Inc.*, 224 F.3d 402 (5th Cir. 2000) (noting that trial courts have wide latitude to determine the admissibility of expert testimony and finding that a university professor of wildlife who extensively studied marshland ecology had sufficient expertise to offer expert testimony about whether canal water intrusion occurred at sufficient levels and speeds to erode the vegetation even though he is not a hydrologist).

Given Ms. Hankal's education, training and experience, she is sufficiently qualified to provide opinion testimony on engineering-related issues concerning the installation of air conditioning systems. The mere fact that she personally never installed such a system and is unfamiliar with adhesives does not render her unqualified. Jorda may, of course, seek to impeach her by pointing out these gaps in her training and background.

Concerning Jorda's attack on Ms. Hankal's methodology, it argues that she did not in her letter identify the quantity or type of glue that should have been used, did not use documents regarding assembly of pipes which explain how to avoid a dry fitting in formulating her opinions and conceded that she lacks particularized expertise in adhesives. But applicability of *Daubert*

---

WL 266422, at *6 (S.D. Fla. Jan. 30, 2012). Judge Rosenbaum also cited *Johnson v. Big Lots Stores, Inc*, Nos. 04-3201, 05-6627, 2008 WL 1930681, at *14 (E.D. La., Apr. 29, 2008) for the following summary of *Rushing*: "explaining that after an individual satisfies the relatively low threshold for qualification, the depth of one's qualification may be the subject of vigorous cross-examination").

factors in assessing methodology and reliability in any given case "will depend . . . on the nature of the issue, the expert's particular expertise and the subject of his testimony." *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005).

While these points raised by Jorda may well be explored at trial and may even create significant impeachment during cross-examination, they are not enough to support the request to completely exclude Ms. Hankal's testimony based on a challenge to the methodology.

Significantly, Ms. Hankal testified that she examined the pipe for hours and even used a microscope to assist her analysis. Moreover, she took measurements, took photographs, consulted the building code, reviewed building plans and spoke with several witnesses. Under these circumstances, the Court rejects the methodology/reliability challenge. *Preis v. Lexington Ins. Co.*, 279 F. App'x 940 (11th Cir. 2008) (insurance adjuster properly provided lay opinion testimony based on personal observations and inspection). *See also Martinez v. Altec Indus., Inc.*, No. 3:02CV1100J32TEM, 2005 WL 1862677, at *10 (M.D. Fla. Aug. 3, 2005) (permitting expert, who explained in deposition how his observations impacted his opinions, to testify in a wrongful death case brought after the death of a person electrocuted while inspecting utility poles for the power company and noting that "while defendants' contention that Dr. Dorsey failed to perform adequate testing to support his conclusion certainly can be explored on cross-examination, it is not a basis to find his testimony unreliable"). In light of Ms. Hankal's observations and personal involvement, her methodology, while perhaps not perfect and certainly capable of improvement, is not so deficient as to justify exclusion of her opinion testimony.

Finally, Jorda argues that Ms. Hankal's expert opinions should be excluded at trial because they would not be helpful to the jury. Upon analysis, however, it appears as though this

7

argument is actually a challenge to her methodology, recast as a challenge to the helpfulness requirement. For example, in the section entitled "Ms. Hankal's Opinion and Testimony Would Not Assist the Trier of Fact," Jorda again notes that Ms. Hankal did not confirm how much glue would be required for the installation, never installed an air conditioning unit and was not familiar with the specific air conditioning unit at the condominium complex.  In other words, Jorda repeated its challenge to her reliability and methodology.

Expert testimony is helpful to the trier of fact only "if it concerns matters that are beyond the understanding of the average lay person." *United States v. Frazier,* 387 F.2d 1244, 1262 (11th Cir. 2004).  Jorda has not explained why testimony about the installation of an air conditioning system, what caused a PVC pipe to become unlodged and whether a hurricane caused the pipe to shift would not help the trier of fact.  Those issues fall outside the realm of the average person's understanding. Phrased differently, "most people do not possess the requisite specialized knowledge and training" to determine the cause of water damage to a building resulting from a leak in a return pipe in a condominium air conditioning system. Therefore, Ms. Hankal's opinions "survive *Daubert's* helpfulness inquiry." *Clena Investments*, 2012 WL 266422, at *10.

By way of summary, Jorda's motion is denied on procedural grounds (i.e., failure to comply with the local rule) and, concerning the *Daubert* challenge, on substantive grounds (although that portion of the Order is, as explained above, only a preliminary ruling, subject to

being revisited at trial should the evidence be different than predicted).

**DONE and ORDERED**, in Chambers, in Miami, Florida, this 16th day of March, 2012.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**

The Honorable Alan S. Gold

All counsel of record