UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 10-21107-CIV-GOLD/GOODMAN

QBE INSURANCE CORPORATION,

    Plaintiff,
v.

JORDA ENTERPRISES, INC.,

    Defendant.
_____

## ORDER DENYING JORDA'S SPOLIATION SANCTIONS MOTION

This cause is before me on Defendant's Motion to Dismiss Complaint with Prejudice, or in the Alternative to Exclude the Expert Opinion of Sherri Hankal or Impose an Adverse Inference Against Plaintiff Due to Spoliation of Evidence, and Supporting Memorandum of Law. [ECF No. 108]. This motion was referred to the Undersigned for disposition by the District Court pursuant to an order of reference. [ECF No. 109].[1] The Undersigned has reviewed the motion, the response, and the reply. [ECF Nos. 114; 121]. For the reasons below, the Undersigned **DENIES** Defendant's motion.[2]

---

[1] There is also pending before the Court Defendant's separately filed Motion for Sanctions Pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. [ECF No. 124]. But this other motion is not ripe yet and, in any event, the District Court has not referred this motion to the Undersigned.

[2] Magistrate judges may issue an order on any "pretrial matter not dispositive of a party's claim or defense." Fed. R. Civ. P 72(a). Such an order may not be set aside unless it "is clearly erroneous or is contrary to law." *Id.* Thus, magistrate judges have jurisdiction to enter sanctions orders for discovery failures which do not strike claims, completely preclude defenses or generate litigation-ending consequences. Practice Before Federal Magistrates, §16.06A (Mathew Bender 2010) ("discovery sanctions are generally viewed as non-dispositive matters committed to the discretion of the magistrate unless a party's entire claim is being dismissed").

In determining between dispositive and non-dispositive discovery sanctions, the critical factor is what sanction the magistrate judge *actually imposes*, rather than the one *requested* by the party seeking sanctions. *Gomez v. Martin Marietta Corp.,* 50 F.3d 33 1511, 1519-20 (10th Cir. 1995) (rejecting argument that magistrate judge ruled on dispositive motion because litigant sought entry of a default judgment and explaining that "[e]ven though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction," then the order is treated as not dispositive under Rule 72(a)); Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 3068.2, at 342-44 (West 1997).

A recent case illustrates a magistrate judge's ability to enter a significant discovery sanction order (as opposed to a report and recommendations) when the effect is not similar to a default judgment or to preclude a defense. In *Moore v. Napolitano*, 723 F. Supp. 2d 167 (D.D.C. 2010), the district judge affirmed a magistrate's discovery sanctions order. In doing so, the district court rejected the argument that the magistrate judge entered a "severe sanction akin to a litigation-ending default judgment" and affirmed the magistrate judge's order precluding the defendant from offering any legitimate, nondiscriminatory reason to rebut any prima facie case of disparate treatment discriminatory non-promotion of the individually named plaintiffs in an employment discrimination case. *See also Carmona v. Wright*, 233 F.R.D. 270, 276 (N.D.N.Y. 2006) (magistrate judges permitted to enter sanctions orders for discovery violations because they are "generally non-dispositive matters" unless the order imposes a sanction which "disposes of a claim; e.g., striking pleadings with prejudice or dismissal"); *Exxon Corp. v. Halcon Shipping Co. Ltd.,* 156 F.R.D. 589 (D.N.J. 1994) (magistrate judge's order precluding expert witness from testifying as a sanction for violation of a pretrial discovery order was reviewed under the clearly erroneous or contrary to law standard of review); *San Shiah Enter. Co., Ltd. v. Pride Shipping Corp.,* 783 F. Supp. 1334 (S.D. Ala. 1992) (magistrate judge authorized to impose Rule 11 sanctions).

Federal magistrate judges in this Circuit frequently enter orders in cases where parties seek sanctions, including **default judgments or dismissals**, for alleged **spoliation.** *See, e.g., Calixto v. Watson Bowman Acme Corp.,* No. 07-60077-CIV, 2009 WL 3823390 (S.D. Fla. Nov. 16, 2009) (Rosenbaum, J.); *Atlantic Sea Co., S.A., v. Anais Worldwide Shipping, Inc.*, No. 08-23079-CIV, 2010 WL 2346665 (S.D. Fla. June 9, 2010) (Brown, J.); *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.,* 736 F. Supp. 2d 1317 (S.D. Fla. 2010) (O'Sullivan, J.). Indeed, federal magistrate judges in Florida have entered orders imposing adverse inferences and attorney's fees as sanctions in spoliation scenarios. *Optowave Co., Ltd. V. Nikitin*, No. 6:05-cv-1083-Orl-22DAB*,* 2006 WL 3231422 (M.D. Fla. Nov. 7, 2006) (Baker, J.) (imposing adverse inference jury instruction based on intentional failure to produce highly relevant emails); *Preferred Care Partners Holding Corp. v. Humana, Inc.*, No. 08-20424-CIV, 2009 WL 982460 (S.D. Fla. Apr. 9, 2009) (Simonton, J.) (awarding costs and fees for "grossly negligent discovery conduct" leading to the destruction of emails when bad judgment, but not bad faith, was responsible for the errors).

In any event, the Undersigned is denying Defendant's motion and therefore this is a non-dispositive ruling that can be determined by a magistrate judge through an Order under Rule 72(a).

**I.     Introduction**

This is a subrogation action advanced by Plaintiff, an insurance company, to recover several million dollars it paid to its insured as a result of flooding that occurred at the insured's condominium building during Hurricane Katrina in 2005. The Defendant is the subcontractor that allegedly improperly installed the air conditioning system, including the return pipe from where the water flowed before it entered the insured condominium building.

In this motion, Defendant requests extreme sanctions, including involuntary dismissal of the entire lawsuit, on the basis that Plaintiff purportedly spoliated certain evidence, namely, the pipe at the heart of the litigation and a 2x4 piece of lumbar that the Plaintiff's insured's employees allegedly used to jam the pipe back into its fitting.[3]

Specifically, Defendant complains that there is a gap in the pipe's documented chain of custody, that Defendant was not permitted to examine the pipe from October 19, 2005 until June

---

[3]     Defendant also vaguely complains about "a lot of [other] stuff" which was supposedly missing, unavailable witnesses, and missing documents in the background section of its motion. Jorda uses the term "stuff" because this is the description which a witness used when explaining what other materials might have been used to try to reposition the pipe. Given this lack of detail, Defendant does not specifically identify the component parts of this other "stuff," and the Court is therefore unable to grant Defendant any relief based upon it. *See Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010) (noting that a party moving for spoliation sanctions must prove that the evidence existed at one time).

In addition, Defendant at one point complains about unavailable witnesses and missing documents. [ECF No. 108, pp. 6-7]. But Defendant does not appear to suggest that Plaintiff caused these witnesses to be unavailable or discuss the missing documents further in the analysis section of the initial *motion.* Therefore, to the extent Defendant seeks relief predicated on these unavailable witnesses or documents, Defendant is not entitled to any relief. *Compare* S.D. Fla. L. R. 7.1(c) (a "reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition without reargument of matters covered in the movant's initial memorandum of law"), *with* [ECF No. 121 (elaborating for the first time regarding some of these missing documents)]; *cf. United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) (issues raised for the first time in a reply brief are not properly before the Court and will not be considered); s*ee also Lamar v. American Fin. Sys. of Fulton Cnty., Inc.*, 577 F.2d 953, 954-55 (5th Cir. 1978) (explaining that it was not an abuse of discretion to deny counsel the right, after submitting the case on one set of hypotheses and learning that it was inadequate, to attempt to inject new issues in the hope of achieving a different result).

30, 2011 (although Defendant acknowledges it *was* permitted to examine -- and did examine -- the pipe on October 19, 2005), and that the 2x4 was not preserved at all.  Plaintiff opposes any award of sanctions on a variety of grounds.  [ECF No. 114].  But most importantly, Plaintiff opposes an award of sanctions because it contends Defendant fails to demonstrate it is unable to prove its defense as a result of the alleged spoliation (i.e., that the evidence is "crucial") -- a critical and necessary finding the Court is required to make before imposing a spoliation sanction.

Because the Undersigned agrees with Plaintiff that Jorda has not established that its ability to prove its defense was impacted, the Court **DENIES** the motion on that ground alone.

## II.   Legal Standards

Spoliation is the "intentional destruction of evidence or the significant and meaningful alteration of a document or instrument." *Southeastern Mech. Servs, Inc. v. Brody*, 657 F. Supp. 2d 1293, 1299 (M.D. Fla. 2009) (citing *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003)).  Spoliation is established where the moving party demonstrates (1) the missing or destroyed evidence existed at one time, (2) the non-moving, allegedly spoliating party had a duty preserve the evidence, and (3) the allegedly spoliated evidence was <u>crucial</u> to the movant's ability to prove a *prima facie* case or defense. *Managed Care Solutions*, 736 F. Supp. 2d at 1322 (quoting *Walter v. Carnival Corp.*, No. 09-20962-CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010)).

> In meeting the requirement to demonstrate that the spoliated evidence was **crucial** to the movant's ability to prove its *prima facie* case or defense, it is not enough that the spoliated evidence would have been relevant to a claim or defense. *Managed Care Solutions*, 736 F. Supp. 2d at 1327–28 (finding that the allegedly spoliated evidence was not crucial to the plaintiff's claims because it could still prove its case through other evidence already obtained elsewhere). *See also Floeter v. City of Orlando*, 6:05–cv–400–Orl–

> 22KRS, 2007 WL 486633, at *6 (M.D. Fla. Feb.9, 2007) (missing emails may be relevant to Plaintiff's case but they were not critical and would have been cumulative).

*Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, No. 09–61166–CIV, 2011 WL 1456029, at *8 (S.D. Fla. Apr. 5, 2011) (emphasis in original).

To demonstrate what type of evidence is (or is not) crucial, a recent case illustrates what *does* constitute "crucial" evidence.  In *Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC*, ---F. Sup. 2d----, 1:09–CV–03531–AT, 2011 WL 7316303, at *4-5 (N.D. Ga. Dec. 5, 2011), several pallets of food were exported from the United States to Panama but arrived with unsafe levels of mold.  Pallets Acquisitions, LLC was the company that exclusively supplied the insured food producer with wooden shipping pallets.  The food producer's cargo insurance company, Kraft Reinsurance, claimed that the mold was caused by the pallets.  However, the pallets and food at issue were destroyed by the insured before Pallets Acquisitions or the insurance company's experts were able to examine them.  Pallet Acquisitions contended that the destruction of this evidence constituted spoliation and moved the district court to exclude the insurance company's expert causation testimony.  The district court agreed and imposed the requested sanction because Pallet Acquisitions was never able to inspect the critical evidence and therefore had no suitable way to rebut the insurance company's theory of causation.

### III. Analysis

Defendant's argument for why it is entitled to an order imposing sanctions is neatly summed up in its reply: "There is simply no reliable evidence regarding the condition of the pipe or the 2x4 or other physical evidence 'pre-spoliation' and, therefore, a jury would have no basis to infer based only on the current condition of the pipe that Jorda was negligent." [ECF No. 121]. But this analysis is off the mark because the relevant concern is whether Defendant is still able to prove its defense. Here, Defendant simply does not demonstrate why a gap in the pipe's

5

chain of custody, its inability to inspect the pipe for several years, or its inability to inspect the 2x4 significantly harms its ability to defend against Plaintiff's claim.[4]

At bottom, one of Plaintiff's theories of the case is that Defendant did not use enough glue to attach the water pipe when it originally installed the pipe. [*See, e.g.,* Letter Dated January 26, 2006 from Sherri Hankal, P.E, ECF No. 107-1, p. 3 ("There is no physical evidence to support the Jorda Mechanical claim that the air conditioning unit shifted during the storm . . . The only connection that failed is the water return pipe that was improperly assembled; specifically, an inadequate amount of solvent cement was used on the return water piping connection")]. Defendant's causation expert, David A. Wojcieszak, P.E., LEED, AP, acknowledged familiarity with Plaintiff's causation theory at his deposition and confirmed that he *could* rebut that theory based upon his visual inspection of the pipe. Specifically:

> Q. What about the visual inspection of the pipe told you it was no longer necessary to test it?
>
> A. Well, if you read my report, the main - - my main function was to evaluate a report that was done by SEA Incorporated, that actually had custody of the pipe. And their conclusion was there wasn't enough glue. And my conclusion was that there was sufficient glue because of the ring that formed around the piece of pipe at the end of the fitting. And that's an indicator that there was enough glue in the fitting whenever it was pushed together and this excess glue pushes out of the fitting.
>
> . . .
>
> Q. Would testing of the glue have assisted you in any way in your opinion?

---

[4] Indeed, if Defendant is correct that "without the [allegedly spoliated physical evidence], documents and witnesses, there is arguably no basis for a finder of fact to infer that there was an insufficient quantity of glue" and a "jury will have no reasonable basis to infer that Jorda is liable," then Defendant can simply point out these deficiencies in the evidence at trial and present a strong defense against Plaintiff's claim. [ECF No. 108, p. 8]. Moreover, Defendant, which inspected the pipe shortly after the hurricane, has not alleged that the pipe was damaged or altered during the gap period (from October 2005 through August 2011).

A. And again, I didn't go that far, mainly because I started to concentrate on other factors after reading some of the reports that may have caused the failure of this piece of pipe.

Q. Okay. But my question was would testing have been beneficial to you, in your opinion?

A. No, I do not. But if you look at installation instructions, they are very explicit about the methodology, the brush size, making sure that you have compatible materials. And the sign that here is enough glue is the fact that you have glue that pushes out of the joint and forms around the joint-to-pipe interface.

Q. And if that was missing, could you conclude visually that there wasn't enough glue?

Mr. ZAFFUTO: Objection to form.

A. I could not conclude that was enough glue. But I do know that if the ring exists there is sufficient glue because it pushes it out of the coupling.

Q. Were you able to observe that in this case?

A. Yes, I was.

. . .

Q. . . . So could it be that it wasn't properly glued?

A. I think I've answered that before. And the only thing that I can attest to is the fact that we had enough glue on this joint that it pushed the glue out of the fitting and formed the ring around the fitting at the end of the male adapter.

. . .

Q. And Ms. Hinkle [sic] actually says that there was an inadequate amount of solvent cement on the return water piping connection. And you disagree with that based upon your physical observation; is that correct?

A. No, I disagree with that totally.

Q. Okay. And why do you disagree with that?

A. Because the visual observation that I have indicates that there was adequate glue because it pushed out of the coupling. If

7

> that ring was not visible on the outside of the pipe that would be a good indicator that there wasn't enough glue on the pipe whenever it was pushed into the coupling.

[ECF No. 114-1].

Mr. Wojcieszak's deposition testimony unambiguously supports the conclusion that Defendant has, and intends to rely on, a viable defense theory that directly rebuts Plaintiff's primary liability theory (i.e., that Defendant used a proper amount of glue to attach the pipe and that this is clearly evidenced by a ring that is still visible on the pipe – notwithstanding any unknown modifications made to the pipe during the gap in its chain of custody or any other time). The above-quoted deposition excerpts were brought to this Court's attention by Plaintiff. Defendant neither attached nor cited to any expert deposition testimony, or any other record material, supporting the conclusion that its ability to prove its defense was in any way compromised by the alleged spoliation. Therefore, the Undersigned must deny Defendant's motion. *See Wilson v. Wal-Mart Stores, Inc.*, No. 5:07-cv-394-Oc-10GRJ, 2008 WL 4642596, at *3 (M.D. Fla. Oct. 17, 2008) (denying spoliation sanctions motion, in part, because there was other evidence from which plaintiff could prove her claim).[5]

Defendant's failure to establish that the allegedly spoliated evidence is "crucial" to its defense is alone reason enough to deny the motion. The Undersigned will therefore not analyze the remaining spoliation prongs in detail. However, the Undersigned will briefly discuss two other critical deficiencies in the motion.

---

[5] In its reply, Defendant does quote its expert as testifying that during the time period between the incident and the expert's inspection "the building and its water condenser system *may* have undergone changes that mask the true cause of the failure," but this exercise in speculation does not change the fact that the expert also testified that he can rebut Plaintiff's theory of liability based upon a visual inspection of the pipe as it currently exists. [ECF No. 121, p. 7 (emphasis added)].

Plaintiff is suing under a subrogation theory. Consequently, the original allegedly harmed party was the insured and the insured controlled all of the evidence at issue in the first instance. Defendant contends that the insured turned the pipe over to Plaintiff's expert shortly after the hurricane. But Defendant does not contend that Plaintiff itself ever possessed the 2x4 and other "stuff," let alone specifically explain when Plaintiff received these items and why it should have known of their importance prior to losing or destroying the items.[6] Defendant also points to no case in the subrogation context holding that an insurance company should be held responsible for its insured's failure to preserve evidence and have its subrogation claim dismissed without consideration of whether the insurance company was itself in any way responsible for the spoliation. In other words, Defendant has not adequately explained why the Court should determine that *Plaintiff QBE*, as opposed to only its insured, was under an affirmative duty to Jorda to preserve this evidence when it was allegedly lost or destroyed or misplaced.

It takes no stretch of the imagination to envision a scenario in which an insurance company received, or could have received, crucial evidence but instead failed to act to preserve it and the omission caused the evidence to go missing. Indeed, this appears have been the case in *Pallets Acquisitions, LLC*, 2011 WL 7316303, at *5-*6 (imposing spoliation sanction where insurance company had notice of defendant's potential subrogation liability but "failed to take any steps to preserve a sample of the evidence"). But Defendant fails to demonstrate this

---

[6] The Undersigned notes that the alleged significance (i.e., the relevance) of the 2x4 and the unidentified other "stuff" is far from obvious. To be sure, the *pipe* itself is critical, but it is not missing and was not destroyed or damaged. But the significance of the missing 2x4 and other unidentified material is speculative. Basically, Jorda guesses that the wood and other stuff *might* contain some remnant of the glue, but this is only a hunch. On such a record, the Undersigned certainly cannot conclude that the evidence -- the 2x4 and other material -- is "crucial." Jorda is free to explore this issue during cross-examination if it believes the speculative glue remnant is a theory which it believes the jury should consider.

9

circumstance in its motion. The deposition testimony Defendant cites in the motion, from two of the insured's employees who allegedly used the 2x4, does not establish the duty. This cited testimony is silent as to Plaintiff's connection, if any, to the evidence, or when the evidence was received, lost and/or destroyed (e.g., was it lost or destroyed before or after the insured notified Plaintiff of the damage and was it lost or destroyed before or after QBE knew of its subrogation claim against Jorda?). Moreover, Jorda has not persuaded the Court that the condominium employees who used the 2x4 immediately after the storm would have even realized the significance of a piece of wood used in an informal way on the scene, in the midst of water damage, or the purported need to preserve it as "evidence."

Finally, the Undersigned notes Defendant's suggestion that the alleged spoliation affects its ability to apportion liability and damages to include non-parties. [ECF No. 108, p. 8 n.5]. The problem with this suggestion (as is also the problem with the motion in general) is that Defendant does not adequately explain **why** the allegedly spoliated evidence is crucial to its defense. Defendant has, in effect, pointed out irregularities in the handling of the pipe (which was, as noted, inspected early on and still exists) and the potential existence and use of a 2x4 block of wood for a short amount of time, but it has not explained why these facts unduly prejudice its defense. There may be many potential missing or destroyed pieces of evidence that are somehow related to a party's claim, but, under the required spoliation analysis, the missing evidence must be *crucial*, not merely related or even helpful. Of course, the only evidence which Jorda knows to have been destroyed or which is still missing is the 2x4 block of wood. The pipe is still in existence and the other "stuff" which may have been used with the block of wood has not even been definitely identified.

IV.     **Conclusion**

For the reasons above, the Undersigned **DENIES** Defendant's motion.[7]

**DONE and ORDERED**, in Chambers, in Miami, Florida, this 20th day of March, 2012.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**

The Honorable Alan S. Gold
All counsel of record

---

[7]     The Undersigned is denying the motion for the substantive reasons stated in the body of this order.  However, there is another possible, procedural reason to deny the motion -- Defendant did not confer with Plaintiff before it filed the motion.  Local Rule 7.1(a)(3) provides as follows: "Prior to filing any motion in a civil case, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, or to **involuntarily dismiss an action,** counsel for the movant shall confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve by agreement the issues to be raised in the motion." (emphasis added).

Although labeled, in part, a motion to dismiss (which is an exception to the Local Rule 7.1 pre-filing conferral requirement), the motion *also* alternatively requests exclusion of expert testimony or an adverse inference jury instruction.  Rule 7.1(a)(3) does not exclude a motion for either of the latter two forms of relief from the pre-filing conferral requirement.  Thus, there is a logical argument that Jorda should have complied with Rule 7.1(a)(3).  Even if Jorda was not technically required to comply with the pre-filing conferral requirement, given the nature of the motion and the alternate relief sought, it would have been prudent for Jorda to have followed the procedure, in an abundance of caution.

To invoke a well-known proverb, Jorda may have been best served by following the rule that it is "better to be safe than sorry."  This popular idiom means "it's wiser to be cautious and careful than to be hasty or rash and so do something you may later regret." The saying is well-known enough to be used in popular music.  For example, singer/songwriter Alicia Keys used the proverb in "Un-thinkable (I'm Ready)," a remix she performed with hip-hop artist Drake.  http://oxforddictionaries.com/definition/better (last visited March 19, 2012); http://www.lyricsondemand.com/a/aliciakeyslyrics/unthinkableimreadyremix1lyrics.html (last visited March 19, 2012).

11