UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 10-21107-CIV-GOLD/GOODMAN

QBE INSURANCE CORPORATION,

    Plaintiff,

v.

JORDA ENTERPRISES, INC.,

    Defendant.
_____/

## ORDER DENYING PLAINTIFF'S MOTION *IN LIMINE* REGARDING EVIDENTIARY HEARING ON DEFENDANT'S SANCTIONS MOTION

In this Hurricane Katrina-related subrogation lawsuit, United States District Judge Alan S. Gold granted Defendant Jorda Enterprises, Inc.'s summary judgment motion against Plaintiff QBE Insurance Corporation [ECF No. 159] and referred Jorda's sanctions motion [ECF No. 124] against QBE to the Undersigned. Judge Gold noted that he would enter judgment after resolution of the sanctions motion. In its motion, Jorda seeks sanctions (under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927) against QBE, its law firm and the individual attorneys who worked on the case or made decisions about the case, including former attorneys of the law firm.

I scheduled the sanctions motion for an evidentiary hearing [ECF No. 177] after hearing the parties' positions about the nature of the hearing. Jorda did not want an evidentiary hearing, **but QBE did.**

QBE then filed the instant *in limine* motion concerning the evidentiary hearing [ECF No. 190] and Judge Gold referred [ECF No. 191] the motion to me, as well.

In its *in limine* motion outlining a proposed procedure for the evidentiary hearing, QBE seeks leave to submit privileged documents *in camera* for the Undersigned's *ex parte* review. It also requests similar permission to submit testimony implicating privileged matter on an *ex parte* basis. QBE's motion does not specify exactly how it expects the Undersigned to review such purportedly protected testimony at the evidentiary hearing. Presumably, however, the Undersigned would either need to exclude Jorda and its counsel from the courtroom or arrange for such testimony at sidebar.

QBE does not explain whether: (1) it expects the Undersigned to assume that all testimony it provides *in camera* is, in fact, privileged and subject to protection or whether I am supposed to critically evaluate the testimony to see *whether* all of it, some of it, or none of it is privileged; (2) the Undersigned is supposed to passively receive the testimony *in camera* or if it would be appropriate for the Undersigned to ask questions of the witnesses presenting *ex parte* testimony; (3) the Undersigned (if questioning is permitted under QBE's proposal) is supposed to ask questions privately, so that Jorda does not hear the questions; (4) (if questioning from the Undersigned is implicitly included in QBE's suggested hearing procedure) the Undersigned should ask the questions which Jorda might be expected to ask (and perhaps other questions as well);

and (5) the Undersigned is then expected to provide a privilege log-type of summary of the *ex parte* testimony to Jorda.

The Undersigned **denies** the motion for the reasons outlined below.

However, as explained later in this Order, QBE is the master of its own privilege protection. If it decides to not introduce privileged documents and not elicit testimony on privileged matters, then the issue never arises and Jorda will not be entitled to obtain privileged information from QBE or its counsel. On the other hand, if QBE places the privileged matters in issue by seeking to substantively rely on them by introducing privileged documents and privileged testimony, then it may very well waive the applicable privilege. QBE cannot use the privilege as a sword and a shield. It cannot try to persuade me to deny the sanctions motion by submitting privileged documents and privileged testimony and simultaneously foreclose Jorda from challenging the very evidence it is relying upon for substantive purposes. That is fundamentally unfair and runs counter to basic privilege law.

But, as noted, QBE (and its law firm and the firm's attorneys – the so-called Sanctions Defendants) can prevent the disclosure of privileged information by not relying on it (and therefore not placing it at issue). Of course, QBE may *prefer* to rely on privileged information because it might provide a more-persuasive defense to the sanctions motion, but this is a voluntary strategy call, not a Court-imposed requirement. If QBE wanted to preserve the privilege, then its position urging an evidentiary hearing

is inconsistent. A request to conduct a substantial portion of a hearing *in camera* is, to a large extent, fundamentally and philosophically at odds with a request for an evidentiary hearing.

I. **APPLICABLE LEGAL PRINCIPLES**

When a party affirmatively relies on privileged information, then the information is automatically placed into issue and any privilege that would otherwise attach is impliedly waived. As succinctly explained in one of the leading treatises on the attorney-client privilege and the work-product doctrine:

> We are told that we cannot have our cake and eat it too. What this means in the privilege context is that a litigant cannot at one and the same time place privileged matters into issue and also assert that what has been placed into issue nonetheless remains privileged and not subject to full discovery and exploration.

Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 343 4th ed. 2001).

The waiver-by-affirmative-reliance doctrine arises in both the attorney-client privilege and work-product doctrine scenarios, and both federal and state courts recognize the waiver-by-voluntary-disclosure rule. *See, e.g., In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) (waiver when party asserts advice of counsel defense to a charge of willful patent infringement); *Chavis v. North Carolina*, 637 F.2d 213, 223-24 (4th Cir. 1980) (waiver of work-product when witness, in defending his credibility, referred to and relied upon alleged work-product material); *Sedco Int'l, S.A.*

4

*v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982) (explaining that a client may impliedly waive attorney-client privilege when a client testifies about portions of the communication, when a client places the attorney-client relationship directly at issue and when a client asserts reliance on an attorney's advice as an element of a claim or defense); *Chiron Corp. v. Genentech, Inc.* 179 F. Supp. 2d 1182, 1186 (E.D. Cal. 2001) (waiver applied to both attorney-client and work-product material); *Abbott Labs. v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 411 (N.D. Ill. 2001) (waiver of work-product by injecting issue of its own negligence into the case); *Hoyas v. State*, 456 So. 2d 1225 (Fla. 3d DCA 1984) (waiver of attorney-client privilege by criminal defendant's voluntary disclosure, during trial testimony, about a significant part of his conversation with counsel).[1]

---

[1]  *See also Cont'l Ins. Co. v. Roberts*, No. 8:05-CV-1658-T-17MSS, 2008 WL 2700055 at *1 (M.D. Fla. July 9, 2008); *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 916 (N.D. Ill. 1989) (waiver of attorney-client privilege by offering former attorney's affidavit to support good faith defense); *Brownell v. Roadway Package Sys., Inc.* 185 F.R.D. 19 (N.D.N.Y. 1999) (employer waived its right to invoke both attorney-client privilege and work-product doctrine by asserting the adequacy of its investigation as an affirmative defense); *Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084 (D.N.J. 1996) (employer waived attorney-client privilege concerning attorney's investigation of plaintiff's allegations by using the results of the investigation as a defense to alleged respondeat superior liability); *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 931-33 (N.D. Cal. 1976) (waiver by relying on attorney's advice and calling the attorneys as witnesses); *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (waiver by prison officials in civil rights lawsuit because they raised affirmative defense of immunity and the legal advice they received is germane to the defense they raised). *Cf. Tibado v. Brees*, 212 So. 2d 61 (Fla. 2d DCA 1968) (spousal privilege waived when husband voluntarily gave deposition testimony about privileged communications with his wife).

The waiver-by-affirmative-use doctrine flows from a notion of fundamental fairness: "to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Century Aluminum Co. v. AGCS Marine Ins. Co.*, No. 11-CV-02514 YGR NC, 2012 WL 3731561, at *3 (N.D. Cal. Aug. 28, 2012) (granting motion to compel because defendant, through its selective disclosures, waived any privileges attached to its coverage counsel's communications about defendant's weather investigation) (*quoting Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 576 (N.D. Cal. 2008)).

If a party could use the privilege as both a sword and a shield, then the party "could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003).

In addition, both federal and state rules of evidence recognize the waiver theory and provide for the scope of the waiver. Federal Rule of Evidence 502(a) provides that the waiver of attorney-client privileged information extends "to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."

Likewise, although the Florida evidence rules do not control here, it is worth noting that § 90.507, Fla. Stat. similarly provides for waiver when the privilege-holder "voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication."[2]

## II. ANALYSIS

In its motion, QBE references the Advisory Committee Notes to Fed. R. Civ. P. 11, which state, in the part quoted by QBE, "the rule does not require a party or an attorney to disclose privileged communications or work product in order to show that the signing of the pleading, motion or other paper is substantially justified." But this comment merely echoes a truism: a party is not **obligated** to disclose privileged information in a Rule 11 proceeding. Instead, it has the opportunity to decide *whether* to make such a disclosure. *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, No. SACV 0400689MRP VBKX, 2007 WL 6137003, at *12 (C.D. Cal. Apr. 16, 2007) (noting that party "was not required to reveal privileged material to Alaris in opposing the Rule 11 Motion" and also explaining that *in camera* declarations produced a "selective waiver" of the

---

[2] Federal Rule of Evidence 502, entitled "Attorney-Client Privilege and Work Product; Limitations on Waiver," provides, in relevant part in subsection (f), "[a]nd notwithstanding Rule 501, this rule applies even if state law provides the rule of decision." Thus, in this diversity action subrogation lawsuit, the federal rule controls the scope of the waiver. *Century Aluminum Co. v. AGCS Marine Ins. Co.*, No. 11-CV-02514 YGR NC, 2012 WL 3731561, at *2-3, n. 2 (N.D. Cal. Aug. 28, 2012).

attorney-client privilege" and explaining that "a party cannot use the attorney-client privilege as a sword and a shield.").

To be sure, QBE and its counsel have not yet disclosed privileged information. Instead, they have merely announced (in a hearing to discuss the procedures for the evidentiary hearing) an *intent* to do so at the evidentiary hearing. Thus, no waiver has yet occurred, as the actual voluntary disclosure (not a prediction or promise that disclosure will be made in the future) is the waiver-triggering event. *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341-342 (9th Cir. 1996). QBE may stop the waiver doctrine from applying by not voluntarily disclosing privileged information at the evidentiary hearing.

QBE cites limited authority to support its proposal that the Undersigned accept documents for *in camera* review and permit witnesses to provide testimony on a confidential basis, outside of Jorda's presence. But these limited citations, do not provide sufficient support for QBE's procedural recommendation.

QBE cites *In Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 732 F. Supp. 2d 653, 660 (N.D. Tex. 2010) for the proposition that, in a Rule 11 motion context, "[f]ederal courts are accommodating regarding privilege issues and allow ex-parte and in-camera filing where appropriate." But this is an out-of-context description of the relevant discussion in *Highmark*. The issue in that case was whether sanctions should be imposed upon defense counsel. The *Highmark* Court explained that the defendant was "not

required to disclose privileged information in defense of its pre-filing efforts." *Id.* It also noted that, "privilege issues notwithstanding, [defendant] and its counsel must comply with the law, including Rule 11." *Id.* That Court then emphasized that the defendant "was not entitled to at once rely on the opinion of counsel to justify its filing of counterclaims but withhold the details of counsel's pre-filing efforts — the sort of details that would allow the Court to verify the adequacy of counsel's efforts — based on privilege." *Id.* Then, after making the "accommodating-regarding-privilege-issues-and-allow-ex-parte-and-in-camera-filing-where-appropriate" comment, the Court pointed out that, "[n]evertheless, Allcare [the defendant] essentially **chose to rely** on Shelton's investigation and analysis" in responding to the motion seeking fees. *Id.* (emphasis added).

Therefore, *Highmark* actually provides support for Jorda's position and, under the specific facts, undermines QBE's position if it decides to rely on privileged information to defend the sanctions motion. *Abbott Point of Care, Inc. v. Epocal, Inc.*, No. CV-08-S-543-NE, 2012 WL 1339982, at *11 (N.D. Ala. Apr. 18, 2012) (rejecting effort to rely on *Highmark*, explaining that a party "is free to decide how it wants to defend" unclean hands allegations, noting that a choice to rely on the advice of counsel defense would open the door to otherwise protected communications and concluding that "**if Abbott prefers for attorney communications to remain protected by the privilege, it should rely upon some other defense.**") (emphasis supplied).

9

QBE's reliance on *Int'l Bus. Counselors, Inc. v. Bank of Ikeda, Ltd.*, No. 89 CIV. 8373 (CSH), 1991 WL 51173 (S.D.N.Y. 1991) is unpersuasive because the issue there arose in a significantly different scenario. Specifically, the privilege-holder there was not the party seeking to introduce privileged information – and specifically opposed the disclosure. Here, QBE, the privilege-holder, sought an evidentiary and announced an intent to itself use privileged information at the evidentiary hearing.

Finally, QBE's citation to *Icon Health & Fitness, Inc. v. Park City Entm't, Inc.*, No. 1:10CV195DAK, 2011 WL 2636829 (D. Utah July 6, 2011) is unhelpful to QBE. The Court there simply and merely mentioned, in passing, that two declarations were filed *in camera* in connection with a Rule 11 motion. It is unclear whether the opposing party objected to the procedure. Indeed, it appears from the background materials submitted by Jorda that the parties in *Icon Health* agreed to the *in camera* procedure. But regardless of whether the procedure was the result of a stipulation, the opinion contains no analysis of the issue and does not discuss in any way the concept of waiver or the unfairness inherent in allowing a party to defend a motion by asking a judge to consider private information kept secret from the moving party.

If QBE decides to rely on attorney-client privileged information at the evidentiary hearing, then it will have generated a waiver applicable to all other attorney-client communications relating to the same subject matter. *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005). There is no bright line test for

determining what constitutes the subject matter of a waiver, and courts weigh the circumstances of the disclosure, the nature of the advice and whether permitting or prohibiting further disclosures would prejudice the parties. *Id.* Because the Undersigned does not know whether QBE will finally decide to waive the privilege by affirmatively relying on privileged information and also does not know which documents and testimony will be placed at issue, I cannot now determine with specificity the scope of the waiver.

As a general rule, the smaller the amount of privileged information disclosed, the narrower the scope of the waiver. Thus, if QBE opts to elicit privileged information from many of its attorneys and to introduce into evidence reports and comprehensive memoranda, then it is likely that the waiver will be substantial. On the other hand, if it discloses only one, two-sentence email and no further privileged documents or testimony, then the subject matter may well be narrow and discrete. The Undersigned cannot pinpoint the scope of the waiver until events unfold at the evidentiary hearing. *See In Re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.),* 348 F.3d 16, 23-24 (1st Cir. 2003) (noting that the case law is of limited assistance in determining the scope of a waiver because of the act-intensive nature of the issues presented).

Unlike waiver of attorney-client material, work-product waiver, however, is not a broad waiver of all work-product related to the same subject matter. Instead, it extends only to "factual" or "non-opinion" work-product concerning the same subject

11

matter as the disclosed work-product. *In re EchoStar Comm'ns Corp.*, 448 F.3d 1294, 1301-1303 (Fed. Cir. 2006).

Because the primary issue in the sanctions motion is whether QBE and its counsel had a substantial basis to file the lawsuit and to proceed with it, the communications QBE and its trial counsel recently had (and continue to have) with new counsel (at the White and Case LLP firm) will remain privileged and will not be encompassed by a waiver (unless communications with White and Case are voluntarily disclosed).

## III. CONCLUSION

QBE has not yet disclosed privileged documents or provided testimony implicating privilege. Thus, no implied waiver has been generated yet. As of now, QBE has only announced an intent to introduce privileged documents and testimony at the hearing. But now that QBE knows, through this Order, the consequences of deciding to rely on such privileged information, it may decide to forego the voluntary disclosure and defend the sanctions motion with non-privileged evidence and arguments. If it opts to not disclose privileged information, then it may assert privilege objections to the responsive, privileged documents called for by Jorda's *duces tecum* subpoena for the evidentiary hearing and provide responsive documents in redacted form.

On the other hand, if QBE places into issue the privileged matters by introducing privileged documents or eliciting testimony concerning privileged communications,

12

then QBE will have generated an implied waiver — and will be required to further disclose additional privileged information. The scope of the waiver will be based on the specific nature of the voluntarily disclosed privileged information. Thus, depending on its hearing strategy decisions, QBE may well be required to completely disclose to Jorda privileged documents, without any redactions.

QBE says that it might seek to disqualify Jorda's counsel in any future proceedings if he "gains an unfair informational advantage based on disclosure of protected information." But QBE has not filed such a motion and the Undersigned is not in the habit of issuing advisory opinions. If QBE were to file such a disqualification motion and if that motion were to be referred to the Undersigned, then I would issue an appropriate ruling. Until then, however, it is inappropriate for me to decide a disqualification issue which may never arise and which might not be referred to me in any event.

QBE now has the guidance it needs to determine whether to voluntarily disclose privileged information at the evidentiary hearing and, if so, the nature and extent of the disclosure.

Accordingly, for the reasons set out above, QBE's motion *in limine* [ECF No. 190] is denied.

**DONE and ORDERED**, in Chambers, in Miami, Florida, this 17th day of September, 2012.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Alan S. Gold
All counsel of record